```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------X

United States,

                Plaintiff,              CV-01-1925 (CPS)

    - against -                         MEMORANDUM OPINION
                                        AND ORDER
Dwight I. Hunter,

                Defendant.

-------------------------------X
```

SIFTON, Senior Judge.

Plaintiff United States brought this action against *pro se* defendant Dwight Hunter ("Hunter") on March 28, 2001, seeking repayment of student loans amounting to $5,166.24.[1] On July 11, 2002, the parties stipulated to the dismissal of the action, without prejudice to refiling.[2] By letter dated March 26, 2007, defendant stated that the U.S. Department of Education withheld his 2006 tax refund "without merit and judgment" and requested a hearing "to recover funds in the amount of $2,388."[3] On April 4,

---

[1] The United States retained a private law firm – Hayt, Hayt and Landau – to pursue this action on the government's behalf up until the lawsuit was dismissed without prejudice in July 2002. The Government's response to the April 4, 2007 Order to Show Cause was filed by the United States Attorney.

[2] Judgment was not entered against the defendant. "[A]t the request of the plaintiff," the Stipulation to Dismiss Action states that "[t]he supporting documents are not available at this time." Stipulation to Dismiss Action dated July 11, 2002, United States v. Dwight Hunter, No. CV-01-1925.

[3] At oral argument on June 20, 2007, the government informed the Court that "more monies have been offset from Mr. Hunter from his 2006 tax return, that were offset in the calendar year in May of 2007." Tr. 2:18-20. The

2007, I issued an Order to Show Cause as to why the relief requested by the defendant should not be granted. For the reasons set forth below, defendant's application is denied.

**Background**

The following facts are drawn from the complaint and the parties' submissions in connection with this motion.[4] Disputes are noted.

On August 2, 1971, plaintiff states that defendant signed a promissory note for a guaranteed student loan to attend Queens College of the City University of New York.[5] Pursuant to the note, $1,000 was disbursed to defendant. On June 26, 1972,

---

government did not object to amending Hunter's application to seek recovery of all of the monies that had been offset from his tax return. Accordingly, I treat Hunter's application as seeking to recover all monies that had been offset from his 2006 return up until June 20, 2007. See Tr. 3:2-3.

[4] Defendant Hunter did not submit opposition papers as directed in the April 4, 2007 Order to Show Cause. He submitted papers in court on May 30, 2007, the date oral argument was scheduled to take place. In order to allow the government time to review defendant's papers, oral argument was rescheduled for and took place on June 20, 2007.

[5] Defendant Hunter states that "[s]ignatures on loan applications are not that of Dwight Hunter." Hunter Declaration, p. 3. "Dwight Hunter" is hand-written under the heading "Signature" on all loan forms. Defendant appears to argue that the Government has offered no proof that loans were made to him. Hunter Declaration, p. 3 ("The United State [sic] of America has not presented any check or checks made out to Queens College, Wilfred Beauty School or Dwight Hunter as proof that a loan did in fact take place. . . ."). In addition to submitting copies of the loan applications signed by a "Dwight Hunter," the government has submitted records under Hunter's name and social security number from the National Student Loan Data System and Department of Education showing *inter alia* the loan type, loan amount, date of loan, and outstanding balances. This evidence is sufficient to establish a presumption that the loans were made to defendant Dwight Hunter. Apart from the conclusory assertion that he never benefitted from any loan, Hunter Declaration, p. 3, Hunter offers no evidence or explanation to rebut the government's evidence demonstrating that the loans were made to him.

defendant signed a second promissory note for a student loan to attend Queens College, and pursuant to that note, $1,000 was disbursed to Hunter.  On June 14, 1976, defendant signed a promissory note that combined the two previous loans, pursuant to which defendant agreed to repay $2,000.  On March 11, 1978, defendant signed a promissory note and disclosure installment ("the 1978 note") reaffirming his commitment to repay the loans in the amount of $1,972.61.[6]  Like all the previous loans, this note was made with Jamaica Savings Bank and guaranteed by the New York State Higher Education Assistance Corporation ("NYSHEAC") under the Federal Family Education Loan Program ("FFELP," formerly the Guaranteed Student Loan Program).  See 20 U.S.C. § 1071.[7]

On September 17, 1978, defendant defaulted on his obligation to repay the loans pursuant to the terms of the 1978 note.  The

---

[6] Defendant Hunter states that he "did not obtain a Student Loan from Jamaica Savings Bank [dated March 1978] to attend Queens College.  I did not attended [sic] Queens College."  Hunter Declaration, p. 2.  Hunter states that the 1978 loan application is "partial and incomplete" because no one signed the space marked "in the presence of" next to the signature space (which is signed "Dwight Hunter").

[7] The FFELP encourages private lenders and states to provide individuals with education loans by providing insurance for unpaid loans from a federal loan insurance fund.  See 20 U.S.C. §§ 1072, 1078. State agencies or non-profit organizations often guarantee the loans, but the Education Department provides reinsurance and loan subsidies.  See Scaniffe Declaration ¶ 12.  If a borrower defaults in repaying the loan, the guaranty agency pays the claim of the loan holder or lender and takes assignment of the loan.  Id. ¶ 14.  The guaranty agency then files a claim for reinsurance with Education.  Id. ¶ 15.  After Education reimburses the guaranty agency a percentage of the loss incurred in honoring the default claims, the guarantor must try to collect the debt from the defaulter.  Id.  Education may require that the loan be assigned to Education.  Id.

guarantor, NYSHEAC, therefore paid the default claim of the lender, Jamaica Savings Bank, in the amount of $2,048.96.[8]  Over the next sixteen years, NYSHEAC did not collect any payments from defendant.  On July 11, 1994, NYSHEAC assigned the loan to the United States Department of Education ("Education").  At that time, the balance due upon the debt was $4,301.99 (the principal amount of $2,048.96, plus interest in the amount of $2,253.03).  Since 1994, six collection agencies have sought payment from defendant.  In 1997, Education referred the loan to the Department of Justice ("Justice") for collection.  Defendant made three voluntary payments toward the debt in 1998 and 1999, in an amount totaling $347.02.  *See* Exhibits A, B, and C, checks to Department of Education from Budget and Credit Counseling Services on behalf of Dwight Hunter, attached to Supplemental Declaration of S. Dawn Scaniffe ("Scaniffe");[9] *see also* Plaintiff's Exh. K, Account Transaction Screen.

---

[8] Plaintiff states that defendant applied for another student loan in March 1981, in which he noted that he owed a student loan having a balance of $2,048.96.  Plaintiff's Response to Order to Show Cause, p. 8 n. 2; *see* Plaintiff's Exhibit J, Student Loan Application, dated March 21, 1981.  Defendant contends without explanation that this loan application is "partial" and "circumstantial."  The application form shows that the applicant sought to obtain the loan to attend "Wilfred Academy" in Brooklyn, New York.  Defendant refers to "Wilfred Academy" as "Wilfred Beauty School," and states that he "did not obtain a Student Loan to attend Wilfred Beauty School.  Never had an interest in Beauty School. . . .  Did not attend Wilfred Beauty School."  Hunter Declaration, p. 2.

[9] From 1992 to 1995, Scaniffe was General Attorney in the Division of Secondary, Elementary, Adult and Vocational Education, U.S. Department of Education.  Since April 1995, she has been General Attorney in the Division of Postsecondary Education, Office of General Counsel, U.S. Department of Education.

On March 28, 2001, the United States filed this action against defendant. By letter dated August 26, 2005, Education notified defendant of its intention to refer his debt to the United States Department of the Treasury ("Treasury"), which would offset defendant's balance due under the Treasury Offset Program ("TOP").[10] The notice informed defendant that he must register any objections to the offset within 65 days of the notice's date. Defendant did not respond within the 65-day period. On March 17, 2006, $2,403 was offset from defendant's tax return and credited toward his debt to Education.

**Discussion**

Jurisdiction

Plaintiff United States contends that "[t]o the extent that the Defendant seeks redress based upon the offset of his federal tax refund," Government's Response to Order to Show Cause, p. 2, this Court does not have subject matter jurisdiction under 26 U.S.C. § 6402(f). That statute provides in relevant part that

> [n]o court of the United States shall have jurisdiction to hear any action, whether legal or equitable, brought to restrain or review a reduction authorized by subsection (c), (d), or (e) . . . . No action brought against the United States to recover the amount of any such reduction shall be considered to be a suit for refund of tax. This subsection

---

[10] Administered by Treasury, the TOP collects delinquent debts owed to federal agencies and states pursuant to *inter alia* 26 U.S.C. § 6402(d) (providing for collection of debts owed to federal agencies) and 31 U.S.C. § 3720A (providing for reduction of tax refund by amount of debt).

does not preclude any legal, equitable, or administrative action against the Federal agency or State to which the amount of such reduction was paid or any such action against the Commissioner of Social Security which is otherwise available with respect to recoveries of overpayments of benefits under Section 204 of the Social Security Act.

26 U.S.C. § 6402(f). 26 U.S.C. § 6402(d) provides in relevant part that

> (1) Upon receiving notice from any Federal agency that a named person owes a past-due legally enforceable debt (other than past-due support subject to the provisions of subsection (c) [the Social Security Act]) to such agency, the Secretary shall
>
> (A) reduce the amount of any overpayment payable to such person by the amount of such debt;
>
> (B) pay the amount by which such overpayment is reduced under subparagraph (A) to such agency;
>
> (C) notify the person making such overpayment that such overpayment has been reduced by an amount necessary to satisfy such debt.

26 U.S.C. § 6402(d). At this time, defendant Hunter has not brought an action against the United States in connection with the offset. Defendant has filed a letter stating that Education "has withheld my 2006 tax return without merit and judgment." He requests an administrative hearing to recover the funds. *See* Letter from Hunter to Court, March 26, 2007. Construing defendant's letter as an action against the Department of Education, this Court has subject matter jurisdiction since the Department of Education is the federal agency to whom the reduction of Hunter's tax overpayment was paid. *See Setlech v.*

*United States*, 816 F.Supp. 161, 166 (E.D.N.Y. 1993) (dismissing for lack of subject matter jurisdiction student loan debtor's claims against the United States, Internal Revenue Service, and Department of Treasury but retaining jurisdiction over claims against Department of Education); *Richardson v. Baker*, 663 F.Supp. 651, 653-55 (finding tax intercept program of 31 U.S.C. § 3720A limits jurisdiction to suits against agency to which the debt is owed).

Failure to State a Claim

In the alternative, the United States argues that Hunter fails to state a claim upon which relief may be granted. Under 31 U.S.C. 3720A, collection of a federal debt, including outstanding loans due under the Treasury Offset Program is lawful so long as the notice requirements of 31 U.S.C. § 3720A(b) are met. Under those provisions,

> [n]o federal agency may take action pursuant to subsection (a) [which requires any federal agency owed by a person past-due, legally enforceable debt to notify the Secretary of the Treasury at least once each year of the amount of such debt] with respect to any debt until such agency –
>
> (1) notifies the person incurring such debt that such agency proposes to take action pursuant to such paragraph with respect to such debt;
>
> (2) gives such person at least 60 days to present evidence that all or part of such debt is not past-due or not legally enforceable;
>
> (3) considers any evidence presented by such person and

> determines that an amount of such debt is past due and legally enforceable;
>
> (4) satisfies such other conditions as the Secretary may prescribe to ensure that the determination under paragraph (3) with respect to such debt is valid and that the agency has made reasonable efforts (determined on a government-wide basis) to obtain payment of such debt; and
>
> (5) certifies that reasonable efforts have been made by the agency (pursuant to regulations) to obtain payment of such debt.

31 U.S.C. § 3720A(b)(1)-(5).

Here, the Department of Education sent the defendant a pre-offset notice dated August 26, 2005. *See* Scaniffe Declaration ¶ 45; Exhibits L, M, and N. The notice letter gave plaintiff 65 days to submit objections to the offset. Defendant did not respond within 65 days of the date of the notice letter, nor does defendant contend that the letter was defective or that he did not receive it. In any event, a pre-offset notice is adequate if it is "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), *quoted in Shabtai v. United States Department of Education* 2003 WL 21983025, at *8 (S.D.N.Y. 2003). So long as reasonable means have been used to provide notice, actually receiving notice is not required. *Shabtai*, 2003 WL 21983025, at *8, and mailing to an address provided by the Internal Revenue Service is

"reasonably calculated" to inform the debtor of the pending offset. *Id.* Even if a debtor received notice after his time to object has expired, the agency satisfies its statutory obligation to inform the debtor by sending notice in a reasonably calculated manner. *See Setlech*, 816 F.Supp. at 167. Because defendant has failed to take action within the time period stated in the notice or within the period provided in 31 U.S.C. § 3720A(b), defendant cannot contest the offset of his federal tax refund through TOP to pay his education loan debt. Accordingly, defendant's application for a hearing to recover his tax refund is denied.

## Conclusion

For the foregoing reasons, defendant's application for a hearing is denied. The clerk is directed to transmit a copy of the within to the parties and to the magistrate judge.

SO ORDERED.

Dated:   Brooklyn, New York
         July 23, 2007

                              /s/ Charles P. Sifton (electronically signed)
                                    United States District Judge